**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

November 8, 2007

The Honorable Patrick J. Leahy
Chairman, Committee on the Judiciary
United States Senate
Washington, DC 20510

     Re: <u>In re Petition of William Beck</u>, No. 07-80534-CIV-ZLOCH (S.D. Fla.)

Dear Mr. Chairman:

     Pursuant to 28 U.S.C. 530D, we are writing to inform you that the Solicitor General has decided that the Department of Justice will not defend the constitutionality of section 80102 of title 46 of the U.S. Code, as adopted by Pub. L. No. 109-304, § 11, 120 Stat. 1690 (2006).

     Section 80102 requires any vessel and master "regularly employed in the business of salvaging on the coast of Florida" to "have a license issued by a judge of the district court of the United States for a judicial district of Florida."*

     Although Section 80102 was included in last year's codification of much of the shipping code, a bill that is currently pending in the U.S. House of Representatives would, if enacted, eliminate the provision altogether.  Section 408 of H.R. 2830, the Coast Guard Authorization Act of 2007, as it has been reported out of the Committee on Transportation and Infrastructure, the

---

*The provision in its entirety reads as follows:

**§ 80102.  License to Salvage on Florida Coast**
    (a) LICENSING REQUIREMENTS.—To be regularly employed in the business of salvaging on the coast of Florida, a vessel and its master each must have a license issued by a judge of the district court of the United States for a judicial district of Florida.
    (b) JUDICIAL FINDINGS.—Before issuing a license under this section, the judge must be satisfied, when the license is for
        (1) a vessel, that the vessel is seaworthy and properly equipped for the business of saving property shipwrecked and in distress; or
        (2) a master, that the master is trustworthy and innocent of any fraud or misconduct related to property shipwrecked or saved on the coast.

Pub. L. No. 109-304, § 11, 120 Stat. 1690 (2006).

The Honorable Patrick J. Leahy
Page Two

Committee on Homeland Security, and the Committee on the Judiciary, would repeal Section 80102. As the reports from the first two committees both explain:

> Section 408 repeals an obsolete provision of law dating from approximately 1848 that requires companies engaged in salvage operations in the State of Florida to be approved by the District Court. No salvage company has been approved since approximately 1921 because no one realized the provision existed until the recent codification of title 46 of the United States Code.

H.R. Rep. No. 110-338, Part 1, 110th Cong., 1st Sess. 59 (2007); H.R. Rep. No. 110-338, Part 2, 110th Cong., 1st Sess. 83 (2007).

The original version of the provision dates back to the 1847 statute creating the district court for the Southern District of Florida, which provided that salvage licenses were to be issued by "the judge of said court." Act of Feb. 23, 1847, ch. 20, sec. 3, 9 Stat. 131. The references to 1921 in the Committee Reports on the pending bill that would repeal the provision stem from the fact that, in December 1921, the register of wrecking licenses maintained at the district court was closed. See Dorothy Dodd, The Wrecking Business on The Florida Reef, 1822-1860, 22 Fla. Hist. Q. 171, 199 (1944). The Department of Justice is aware of only one reported instance between 1921 and 2006 in which a license was issued. See In re Marine Archaeological Enterprises, Inc., 280 F. Supp. 477 (S.D. Fla. 1968).

The Department's consideration of section 80102 was triggered by a proceeding that is pending in the United States District Court for the Southern District of Florida. See In re Petition of William Beck, No. 07-80534-CIV-ZLOCH (S.D. Fla.). In that proceeding, William Beck sought a license for himself and seven vessels. On July 5, 2007, pursuant to 28 U.S.C. 2403(a) and Federal Rule of Civil Procedure 5.1, the District Court notified the Attorney General that the Court itself had raised the question of whether Section 80102 is "constitutionally permissible." As far as the Department is aware, this is the first time a court has notified the Department concerning the constitutionality of the statute. Mr. Beck, through counsel, took the position that the statute was not constitutional. On September 24, 2007, the District Court granted the motion of the United States to intervene in the proceeding under 28 U.S.C. 2403 to present materials relating to the question of constitutionality. The Department has informed the Court that it will file its brief addressing constitutionality by November 7, 2007.

By regulation, the Solicitor General of the United States authorizes governmental intervention "in cases involving the constitutionality of acts of Congress." 28 C.F.R. 0.21 (2007). On November 7, 2007, the Solicitor General determined that the Department would not defend the constitutionality of Section 80102 for the reasons that follow.

The Honorable Patrick J. Leahy
Page Three

     Mr. Beck has raised concerns that Section 80102 violates Article III of the Constitution by requiring a court to consider licenses in a non-adversarial proceeding that does not constitute a case or controversy. While the nature of the licensing proceeding raises serious questions about whether Congress <u>could</u> vest the licensing authority in the courts as part of their Article III responsibilities, that is not what Section 80102, in fact, does. Section 80102 does not purport to vest the licensing function in a district <u>court</u> but rather in "a <u>judge</u> of the district court of the United States for a judicial district of Florida" (emphasis added). That distinction does not appear to be accidental. The key distinction between the court and the judge has been present in every version of the statute since 1847. See 46 U.S.C. App. 724 (2000); Rev. Stat. § 4241; Act of Feb. 23, 1847, ch. 20, sec. 3, 9 Stat. 131. The date of the original enactment is also significant in this regard, because an 1852 Supreme Court case construed a similarly phrased provision of comparable vintage. In <u>United States</u> v. <u>Ferreira</u>, 54 U.S. (13 How.) 40 (1852), the Court considered an 1849 statute, which authorized "the judge of the District Court of the United States for the northern district of Florida" to receive and adjudicate certain claims under an 1834 statute implementing aspects of the 1819 treaty by which Spain ceded Florida to the United States. Act of Mar. 3, 1849, ch. 181, 9 Stat. 788. In <u>Ferreira</u>, the Supreme Court reasoned that the law had imposed the duty "upon the judge," rather than "the court," and the judge was thus being asked to perform as a "commissioner[]." 54 U.S. at 50-51. That distinction was critical to the Court's conclusion that it lacked appellate jurisdiction to review the determination of a judge as a commissioner, as opposed to a decision rendered by a lower <u>court</u>.

     Other contemporaneous evidence supports the view that the statute gives the licensing function to the judge as an individual rather than to the court. In 1858, Little, Brown & Co. published <u>A Treatise on the Law of Wreck and Salvage</u>, written by William Marvin, who was then the sole judge of the District Court for the Southern District of Florida. That treatise, paraphrasing the statute, said: "The judge is authorized * * * to license wrecking vessels." <u>Id.</u> § 2 at 5. One chapter of the treatise was entitled, in the table of contents: "Of the Court and its Jurisdiction." Although it devoted 18 pages to describing the extent of the court's jurisdiction, that chapter never mentioned the licensing function. <u>Id.</u> §§ 19-31 at 28-45. The appendix to the treatise reprinting the "Rules of the District Court of the United States, for the Southern District of Florida," did not include any procedures for licensing. <u>Id.</u> at 300-308. Instead, such procedures were included in a separate appendix, entitled "Rules for Wrecking," which again stated that "vessels * * * must be licensed by <u>the judge</u>." <u>Id.</u> at 338-341 (emphasis added). Finally, the sample license contained in the treatise's appendix of forms was captioned and signed differently from the samples of orders and decrees that were issued by the court in admiralty. Compare <u>id.</u> at 319-322 (decrees in salvage cases) and 327-328 (order of survey), with <u>id.</u> at 337 (wrecking license).

     Although the fact that Section 80102 vests the licensing function in a judge rather than the court ameliorates some of the Article III concerns raised by Mr. Beck, it raises distinct questions of whether a judge can be forced to exercise this non-judicial function and whether the separate authority can be vested in the judge as an individual without separate appointment or

The Honorable Patrick J. Leahy
Page Four

without any separate mechanism for removal of this non-Article-III function. Indeed, in Ferreira itself, the Supreme Court pointed out that a serious constitutional question was presented because the judge for the Northern District of Florida did not have a separate appointment from the President to serve as a commissioner adjusting treaty claims. The Supreme Court did not decide that constitutional question, however, because it had not been raised by a party and the Court had already concluded that it did not have jurisdiction over the appeal from a determination by the judge because that determination was not issued by a court. See 54 U.S. at 51.

More recently, the Supreme Court has characterized Ferreira as allowing "a federal judge, in an individual capacity, to perform an executive function," but only when other separation-of-powers limitations are satisfied. Mistretta v. United States, 488 U.S. 361, 403 (1989). For instance, "Congress may delegate to the Judicial Branch non-adjudicatory functions that do not trench upon the prerogatives of another Branch and that are appropriate to the central mission of the judiciary." Id. at 388. In Mistretta, the Court determined that judges in their individual capacities voluntarily could sit on the U.S. Sentencing Commission. The President appoints members of the Commission, by and with the advice and consent of the Senate, and the members are subject to removal from the Commission (but not from their Article III duties) by the President for neglect of duty or malfeasance in office or for other good cause shown. In rejecting a separation-of-powers challenge to the Commission, the Court noted among other things that, "[s]ervice on the Commission by any particular judge is voluntary," id. at 405, and, "[i]n contrast to a court, the Commission's members are subject to the President's limited powers of removal" under the Sentencing Commission statute. Id. at 394.

Section 80102 does not appear to satisfy the limited conditions under which judges may exercise a non-adjudicatory function. Leaving aside the question whether the licensing function is "appropriate to the central mission of the judiciary," vesting the licensing function in a district court judge does "trench upon the prerogatives of another Branch," id. at 388, for two reasons. First, the function of issuing licenses is an executive rather than judicial one. Indeed, the Executive Branch routinely issues licenses—including licenses to vessels and their masters, see, e.g., 46 U.S.C.A. 7101, 8101, 8301-8304 (2007). By contrast, the issuance of salvage licenses is a function that has not been traditionally associated with the judiciary. Even in the mid-nineteenth century, when other federal district courts had admiralty jurisdiction, Congress did not give such a licensing task to anyone else but the judge of the Southern District of Florida. In this sense, the licensing function has "no analogy to the general or special powers ordinarily and legally conferred on judges or courts to secure the due administration of the laws." Ferreira, 54 U.S. at 51. Moreover, as compared to the extra-judicial services as a commissioner to consider claims pursuant to a treaties at issue in Ferreira, the licensing function conferred by Section 80102 appears substantially more anomalous, and indeed unique.

The Honorable Patrick J. Leahy
Page Five

Second, district court judges in Florida, unlike the members of the Sentencing Commission in Mistretta, do not receive a separate appointment to support their licensing function. They therefore are not subject to even "limited powers of removal" by the President, as were the judges in Mistretta (in their separate and limited capacity as members of the Sentencing Commission). Id. at 394. Instead, such district court judges hold office, pursuant to Article III of the Constitution, "during good Behaviour" and can be removed only through the impeachment process. There is simply no mechanism to address a Florida district court judge who is very good at discharging Article III responsibilities, but not well suited to discharging the separate and distinct licensing function. While it could be argued that the absence of a viable removal mechanism would be less problematic in the context of a non-judicial function subject to direct Executive Branch supervision—as in the determinations by "commissioners" in Ferreira, which only had effect if approved by the Secretary of the Treasury—the licensing determinations of the judge here are subject to no Executive Branch check that might ameliorate the absence of a removal authority. Indeed, it appears that a determination by a judge to grant or withhold a license is final and subject to no review by any officer, judicial or executive.

Section 80102 also raises a distinct Article III concern in that, in contrast to service on the Sentencing Commission, a judge of a district court in Florida appears to have no choice under Section 80102 but to discharge the non-Article-III licensing function. The voluntary nature of service on the Commission was important to the Supreme Court in Mistretta. See, e.g., 488 U.S. at 405. Section 80102 does appear, in the words of the Mistretta Court, to "conscript judges" for non-judicial service in a manner that raises a distinct Article III concern.

Because Section 80102 purports to give an executive function to federal district judges without providing any means of control over the exercise of that function to officers within the Executive Branch, the Solicitor General has concluded that the Department will not defend the statute. The Department is making a filing pursuant to 28 U.S.C. 2403 informing the District Court of the Department's views. In light of the unusual nature of the District Court proceeding (e.g., the Department's view that it does not, properly understood, involve a case or controversy), there is no clear schedule for further filings or for a decision by the District Court. In all events, the District Court has not yet issued any ruling on the constitutionality of Section 80102.

Please let us know if we can be of any further assistance in this matter.

Sincerely,

Brian A. Benczkowski
Principal Deputy Assistant Attorney General